CHARLES W. SANFORD, APPELLANT, V. CLARENCE SCOTT ET AL., APPELLEES.

FILED DECEMBER 23, 1920.    No. 21162.

1. **Taxation:** TITLE: MERGER. No merger of a tax with a title subsequently acquired by quitclaim deed takes place where the evidence shows that the possessor of both titles did not so intend.

2. ———: APPLICATION FOR TAX DEED: NOTICE. Under section 6543, Rev. St. 1913, publication of a notice of application for a tax deed by the purchaser of real estate at a public sale thereof for delinquent taxes is not required, unless there is no person in actual occupancy of the premises, and, also, the person in whose name the title to the land appears of record cannot, upon diligent inquiry, be found in the county.

3. ———: TAX DEED: WITNESS. It is not essential to the validity of a tax deed that it be witnessed.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*Reese & Stout,* for appellant.

*Lincoln Frost* and *Herman Rosenthal, contra.*

CAIN, C.

The plaintiff, Charles W. Sanford, brought this suit to foreclose a mortgage of $500 on lot 10, in block 1, East

Sanford v. Scott. ·

Lincoln, and to cancel a county treasurer's tax deed purporting to convey the same to the defendant, Herman Rosenthal, on January 13, 1915. The case was tried on plaintiff's second amended petition, the answer of the defendant Rosenthal thereto, and the reply. Various interlocutory orders were made with reference to previous pleadings, but, as such orders do not affect the merits of the controversy, they will be disregarded. The decree of the district court was that the defendant Rosenthal had acquired good title to the premises by virtue of his tax deed free and clear of the lien of plaintiff's mortgage, and that plaintiff's suit be dismissed without prejudice, however, to certain tax certificates held by him which had not matured at the time of the trial. The plaintiff appeals, assigning the following errors, viz.: (a) The court erred in striking from the petition the allegation of merger of the tax title with the title acquired by a later quitclaim deed. (b) That the publication of the notice under which the tax deed was issued was insufficient and fraudulent, and that, therefore, the tax deed was void, and plaintiff's mortgage was a valid lien. (c) That the tax deed is void because the same was not witnessed. We take up these assignments in their order.

Appellant contends that when the defendant Rosenthal obtained a quitclaim deed from the heirs of the mortgagor on August 24, 1916, the tax title he had acquired on January 13, 1915, became merged into it, and that, therefore, Rosenthal holds the premises subject to plaintiff's mortgage. Of course, if Rosenthal holds under a valid tax deed, he owns the premises free of plaintiff's mortgage, under the authority of *Topliff v. Richardson,* 76 Neb. 114. But, if he holds under the quitclaim deed, the mortgage, if valid, would still subsist, and the court erred in striking the allegations of merger. We do not think, however, under the admitted facts, that there was any merger. In *Longfellow v. Barnard,* 58 Neb. 612, this court said: "Whether a merger results from the possession by the same person at the same time of two estates of different rank

in the same property depends generally on the intention of the owner." On rehearing, this decision was adhered to in 59 Neb. 455. In *Rand v. Fort Scott, W. & W. R. Co.,* 50 Kan. 114, the court said: "Merger is very largely a question of intention, and the court will always presume against it whenever it will operate to the disadvantage of a party." And, this doctrine was reaffirmed by the Kansas court in *Zuege v. Nebraska Mortgage Co.,* 92 Kan. 272, 52 L. R. A. n. s. 877, where the precise question here involved was decided adversely to appellant's contention. It seems clear that the holder of the tax title in this case could not have intended a merger of that title into the title conveyed by the quitclaim deed, since by so doing he would have subjected the property to the lien of plaintiff's mortgage to his disadvantage. Not having intended it, we must hold that no merger took place, and that there was no error in the court's ruling.

Appellant's next contention is that the tax deed is void because the published notice of the expiration of the time for redemption and of the applicaton for a tax deed under section 6543, Rev. St. 1913, is fraudulent upon its face. To make appellant's position clear, it is necessary to state some of the undisputed facts. The mortgage sought to be foreclosed was given by Emily C. Stone and her husband, George W. Stone, on October 3, 1901, to Woodward Brothers, and acquired by plaintiff by assignment, which, though challenged, will be treated as valid for the purpose of this opinion. On February 25, 1902, Emily C. Stone died, and on April 3, 1902, her will was admitted to probate in the county court of Lancaster county, Nebraska. On the 5th day of November, 1912, the lot in question was sold at public sale to the defendant Rosenthal for delinquent taxes thereon for the year 1911. On the 10th, 17th and 24th days of July, 1914, the purchaser published a notice in the Firth Echo, setting forth that he had purchased the lot at public tax sale on November 5, 1912, and that at the expiration of three months from the service of the notice and after November 5, 1914, he would apply to

the county treasurer of Lancaster county, Nebraska, for a tax deed. Proof of publication of this notice was made by the publisher of the paper in the usual form, setting forth that it was a legal newspaper published and of general circulation in said county. On January 13, 1915, the tax deed was issued to Rosenthal by the county treasurer. Appellant's argument is that the Firth Echo is an obscure village paper, publication in which tended to conceal rather than impart notice, and that, as there are many newspapers published in the city of Lincoln in which publication might have been made at the same cost, which is fixed by statute, the publication in the paper at Firth bears on its face the stamp of fraud. There is no evidence of the circulation of the Firth Echo outside the publisher's affidavit referred to, and, while we might take judicial notice of the population of the village, we could scarcely take such notice of the extent of the paper's circulation. However, this point becomes immaterial for the reason that we have reached the conclusion that, under the circumstances of this case, no publication of notice was required at all. Section 6542, Rev. St. 1913, provides, among other things, that the purchaser at the tax sale, before he shall be entitled to a deed to the land purchased, shall serve a notice "on every person in actual possession or occupancy of such land or lot and also upon the person in whose name the title to said land appears of record in the office of the register of deeds of the county, if upon diligent inquiry he can be found in the county." It is admitted in this case that due notice was served upon the actual occupant of the lot. It is also admitted that the person in whose name title to the lot appeared in the office of the register of deeds of the county was Emily C. Stone, and that she had been dead over 12 years at the time of the publication referred to. It is obvious that "diligent inquiry" would not have discovered her presence in the county, and that, therefore, the statute did not require the purchaser to serve any notice upon her. It is to be noted that section 6542 relates only to actual personal service of no-

tice.  The section relating to publication of notice in a newspaper is section 6543, Rev. St. 1913, and that portion thereof relating to the subject under discussion is as follows: "If no person is in actual possession or occupancy of such land or lot, *and* the person in whose name the title to the land appears of record in the office of the register of deeds in the county cannot, upon diligent inquiry, be found in the county, then such purchaser or his assignee shall publish the notice in some newspaper published in the county and having a general circulation therein." It will be observed in the foregoing that two things must concur before publication of notice in a newspaper is required, viz., that the premises are unoccupied, and that the record owner cannot, upon diligent inquiry, be found in the county.  The statute is in the copulative.  In the instant case, there was a party in actual occupancy of the lot upon whom due notice was actually served, and, hence, there was no requirement of the statute for publication. It is only where there is both vacancy of the premises and practical impossibility of finding the record owner in the county that publication of notice in a newspaper is required.  It seems to have been the legislative intent that, where there is either an actual occupant of the premises or a record owner thereof in the county upon whom actual personal service of the notice can be and is had, then publication of notice in a newspaper is not necessary.  Having arrived at this conclusion, it follows that whether the published notice in his case was fraudulent or otherwise becomes immaterial.

It is finally argued by appellant that the tax deed was void for want of a witness.  Section 6546, Rev. St. 1913, prescribes the form of the tax deed and it requires no witness.  The section then provides: "The deed so made by the county treasurer shall be under his official seal of office and acknowledged by him before some officer authorized to take the acknowledgment of deeds, and when so executed and acknowledged shall be recorded in the same manner as other conveyances of real estate, and when so recorded

shall vest in the grantee, his heirs and assigns, the title of the property therein described." This provision clearly dispenses with any witness, and as the deed in this case was executed in conformity to this section of the statute, it is sufficient. *Bowers v. Chambers,* 53 Miss. 259. But appellant cites section 6196, Rev. St. 1913, requiring that deeds must be executed in the presence of at least one competent subscribing witness, and also cites *Child v. Baker,* 24 Neb. 188, as holding that an unwitnessed deed in this state is insufficient to convey title except as between the parties to the deed. Section 6546 prescribing the form of a tax deed was a special statute enacted subsequently to section 6196, the general statute cited by appellant, and, hence, if there is any conflict between them, the former general enactment must yield to the latter special enactment of the legislature. *Williams v. Williams,* 101 Neb. 369; *State v. Penrod,* 102 Neb. 734. It seems obvious to us that authentication of the execution of an instrument by a public official need not be attended with as great formality as that of a private person, and that it is not essential to the validity of a tax deed that it be witnessed.

Our conclusion is that the tax deed conveyed the title to the defendant Rosenthal free from the lien of plaintiff's mortgage, and that the judgment of the district court is right, and we recommend that it be affirmed.

Per Curiam. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

Affirmed.